# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | 8:06CR98 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | |
| JEROME ELLIS, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion of defendant Jerome Ellis (Ellis) to suppress (Filing No. 16). Ellis is charged along with co-defendant Connie Miller (Miller) with a conspiracy to distribute "crack" cocaine in violation of 21 U.S. C. § 846 (Count I). Ellis is also charged in Count III with the possession of "crack" cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Ellis seeks to suppress evidence seized on December 17, 2005, by officers of the Omaha Police Department (OPD) while at Miller's residence in Omaha, Nebraska. Ellis also seeks to suppress any statements he may have made during the search.

The court held an evidentiary hearing on the motion on July 26, 2006. Ellis was present with his counsel, Michael L. Smart. The United States was represented by Assistant U.S. Attorney Thomas J. Kangior. The court heard the testimony of OPD Officer Eugene Watson (Officer Watson). Ellis requested and was given until August 1, 2006, in which to file a post-hearing brief. The government was given until August 7, 2006, in which to respond. A transcript (TR.) was filed on July 28, 2006 (Filing No. 33). Ellis filed a post-hearing brief on July 31, 2006 (Filing No. 35). The government filed a response on August 4, 2006 (Filing No. 38). The motion was deemed submitted on August 4, 2006.

## FINDING OF FACT

In December 2005, Officer Watson, a 12-year veteran of the OPD in gang and drug investigations, was assigned to the North gang suppression squad (squad) (TR. 3). Officer Watson had participated in over 300 narcotics investigations and found it common for drug dealers use firearms (TR. 17). Prior to December 19, 2005, the squad had conducted

narcotics investigations stemming out of a residence at 4914 Ames Street in Omaha known to be occupied by Miller (TR. 4). Around 8:30 p.m. on December 19, 2005, officers of the squad, including Officer Watson, went to 4914 Ames to conduct a follow-up investigation (TR. 4). Upon the squad's arrival at 4914 Ames, the officers knocked on the door (TR. 4). The door was answered by Miller, and the officers told her why the officers were there (TR. 4-5). Miller invited the officers into the residence and they entered (TR. 5).

While Officer Baudler was talking with Miller, Officer Watson was observing two black males who were in the living room area (TR. 5). One male was seated near the door and the other, Ellis, was across the room seated on a sofa (TR. 5). Ellis appeared to be very nervous and fidgety, rubbing his hands and staring at the officers (TR. 6). At one point, Ellis stood up from the sofa and then seated himself again (TR. 6). Officer Watson asked the occupants if any of them had any weapons on their persons (TR. 6). Miller and the other male occupant replied they had no weapons (TR. 6). Ellis did not respond to the question (TR. 6). Officer Watson then specifically asked Ellis if he had any weapons at which time Ellis put his hand near his front pocket (TR. 6). Officer Watson told Ellis that Officer Watson was going to conduct a pat-down search of Ellis to insure he didn't have any weapons (TR. 6). Ellis stood up and stated Office Watson was not going to check him for anything and attempted to push past Officer Watson (TR. 6-7). Officer Watson testified that Officer Watson was standing between Ellis and the doorway to the residence and that Ellis would have to go past Officer Watson to leave the residence (TR. 15). When Ellis stood up as Officer Watson approached Ellis, Ellis took his hand and pushed at Officer Watson (TR. 7). Officer Watson grabbed hold of Ellis and both Officer Watson and Ellis fell over onto the sofa (TR. 7). As Officer Watson was trying to control Ellis, Ellis stated that "all he had was dope in his pocket" (TR. 8). Thereafter, Ellis was handcuffed behind Ellis's back by Officer Watson (TR. 8). Officer Watson then retrieved the dope from Ellis's pocket (TR. 9).

Ellis was arrested and transported to OPD Central Station (TR. 9). Officer Watson interviewed Ellis at Central Station and advised Ellis of his *Miranda* rights (TR. 9). Ellis acknowledged his rights and agreed to talk with Officer Watson (TR. 9). Ellis told Officer Watson that 30 to 40 minutes prior to officers arriving, Ellis received about a quarter ounce

2

of "crack" cocaine from an unknown party (TR. 10). Ellis stated he did not sell any of the "crack" cocaine (TR. 10). Ellis also stated he typically goes through Miller to get his dope (TR. 10). Ellis described the unknown party as "Peanut" but did not have contact with "Peanut" as Miller always contracted "Peanut" when Ellis needed dope (TR. 10).

## LEGAL ANALYSIS

Ellis argues the search of his person at 4914 Ames Street on December 17, 2005, was unlawful, his statement to officers at 4914 Ames Street on December 17, 2005, was not voluntary, his arrest was unlawful, and the resulting statement he made at OPD Central Station should be excluded from evidence under **United States v. Wong Sun**, 371 U.S. 471 (1963). The government argues the pat-down of Ellis at 4914 Ames Street on December 17, 2005, was lawful, Ellis's statement regarding the "dope" on his person was volunteered and voluntary, and Ellis's statement given at OPD Central Station later that evening was voluntary after having been advised of his **Miranda** rights.

### A. The Pat-Down and Search of Ellis

Officer Watson is a 12-year veteran of the OPD and experienced in gang and drug investigations. Officer Watson had participated in over 300 narcotics investigations and found it common that drug dealers use firearms. Officer Watson was aware that narcotics had been sold out of the residence at 4914 Ames Street prior to December 17, 2005. When the OPD officers were allowed into the residence, they observed Miller and two males. When asked if anybody had weapons on them, all but Ellis answered in the negative. Ellis did not respond but acted nervously, stood up, placed his hands near his front pocket, and attempted to brush past Officer Watson. The Eighth Circuit has held that "[f]ollowing a consensual or otherwise lawful entry into a private dwelling, police can pat a suspect down for weapons if they have a reasonable, particularized suspicion that the suspect is armed." **United States v. Brooks**, 2 F.3d 838, 842 (8th Cir. 1993), (**citing Terry v. Ohio**, 392 U.S. 1 (1968) and **United States v. Flippin**, 924 F.2d 163, 165-66 (9th Cir. 1991)); **see also United States v. Roggerman**, 279 F.3d 573 (8th Cir.). In this case, Officer Watson was a seasoned gang and drug investigator. He was well aware that drug

dealers often carry firearms. He was investigating narcotics trafficking out of the residence at 4914 Ames Street. When the occupants were asked if anybody had firearms, Ellis was the only one to decline to answer and made furtive gestures and appeared nervous. He stood up and attempted to brush past Officer Watson. While the pat-down did not take place before Officer Watson and Ellis grappled and fell to the sofa, Officer Watson's approach to attempt the pat-down was based upon a particularized and reasonable suspicion that Ellis was armed. Accordingly, the attempted pat-down was justified for Officer Watson's and his fellow officer's safety.

### B. Ellis's Statement at the Residence

As Officer Watson and Ellis grappled and fell to the sofa, Ellis blurted out that he only had "dope" in his pocket. While Ellis may have believed the officers would find the "dope" when it was clear the officers were going to conduct a pat-down of Ellis as Ellis was wrestled to the sofa and floor, Ellis's statement was not the product of any police questioning. The definition of questioning includes, "either express questioning or . . . any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the [defendant]." ***United States v. Koontz***, 143 F.3d 408, 411 (8th Cir. 1998) (**citing *Rhode Island v. Innis***, 446 U.S. 291, 300-01 (1980)). In this case, Ellis volunteered the statement, either as an explanation of his actions or for some unstated reason. In any event, the police officers did not initiate any questioning and Ellis's statement that he had "dope" is admissible against him.

Once Ellis made the statement, the officers had probable cause to search Ellis whereupon they found the "crack" cocaine. As such, there was probable cause to arrest Ellis and place him in custody.

### C. Ellis's Statement at OPD Central Station

After Ellis was arrested at 4914 Ames Street, he was taken to OPD Central Station and interrogated. Prior to his interrogation, Ellis was advised of his rights under ***Miranda v. Arizona***, 384 U.S. 436 (1966). Ellis waived his rights and agreed to talk with Officer Watson. There is no evidence Ellis did not understand the advice of rights, nor that there

4

was an overreaching by law enforcement officials amounting to coercive police activity. The court finds Ellis's statement to be voluntary and admissible in evidence. Since the court has already found that Ellis was not illegally searched or arrested, Ellis's argument that his statements should be suppressed as the fruit of an illegal search or arrest pursuant to **Wong Sun v. United States**, 371 U.S. 471 (1963), is without merit.

**IT IS RECOMMENDED TO SENIOR JUDGE LYLE E. STROM that:**

Ellis's motion to suppress (Filing No. 16) be denied.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 13th day of September, 2006.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge